FAIR, J.,
for the Court:
¶ This appeal arises from a motion to set aside a settlement agreement. On March 12, 2010, Bill Kinard and Linda Kinard, as directors of Legacy Hall of Fame Inc. (collectively “Legacy Hall”), filed a complaint in chancery court against Transport Trailer Service Inc., Larry Michael, and Becky Michael (collectively “Transport Trailer”), seeking delivery of a negotiated bus and money damages. Transport Trailer filed a counterclaim seeking $188,058.71 from Legacy Hall for attorneys’ fees and services rendered. The parties entered into a written settlement agreement on December 12, 2011. The bus was sold at *107 auction in March 2012 to Transport Trailer. Four months later, Legacy Hall filed a motion to set aside the settlement agreement, claiming that Bill had lacked the mental capacity to agree to the settlement. The chancellor held an evidentiary hearing and found that the agreement was enforceable and that Bill was competent at the time he signed it. Legacy Hall appealed. After careful review, we affirm the chancellor’s decision.
FACTS
¶2. In 2009, Legacy Hall hired Transport Trailer to deliver a 1976 tour bus and a 1957 Cadillac from Yakima, Washington, to Tupelo, Mississippi. The tour bus and Cadillac were allegedly connected to Elvis Presley. Transport Trailer eventually delivered the Cadillac to Legacy Hall but refused to deliver the bus. Transport Trailer requested the sum of $188,058.71 for its services, which included retrieval of the vehicles and restoration of the bus.
¶3. Bill’s deposition was scheduled for December 12, 2011, at his attorney’s office in Tupelo. That same day, the parties reached an agreement to resolve the dispute. The settlement agreement gave Legacy Hall forty-five days to sell the bus and pay Transport Trailer $134,000 from the sale proceeds. The agreement further provided that if the bus did not sell within forty-five days, then the bus would be sold by a third party, with Transport Trailer receiving the first $134,000 from the proceeds of the sale.
¶ 4. Legacy Hall was unable to sell the bus within forty-five days. So, as stated in the settlement agreement, the bus was auctioned on March 31, 2012. Larry of Transport Trailer was the only bidder, winning the bus for $85,000. On July 26, 2012, Legacy Hall filed a motion to set aside the settlement agreement, alleging that Bill was incompetent on December 12, 2011, when he signed the agreement. The chancery court subsequently held an evi-dentiary hearing on the motion.
¶ 5. At the hearing, Legacy Hall called Dr. Deanna White, Bill’s physician and an internal medicine attending physician at North Mississippi Medical Center in Tupe-lo. Dr. White was introduced as a lay witness giving her opinion as Bill’s physician. Dr. White testified that she began treating Bill in April 2008 for several conditions, primarily bipolar disorder. Legacy Hall attempted to elicit Dr. White’s opinion on Bill’s competency before and after the agreement was signed.
¶ 6. Dr. White testified that she saw Bill three times in December 2011-December 5, 13, and 21. Dr. White stated that Bill was incompetent on December 5. Dr. White said that on December 13, Bill was “intact,” but not necessarily competent. As for December 21, Dr. White said that Bill was competent and capable of conducting business.
¶ 7. The chancellor also heard testimony from Bill, Linda, Larry, Ben Logan (Legacy Hall’s attorney at the time of the deposition), and Meah Bennett, the court reporter present at the deposition.
¶ 8. On November 15, 2012, the chancery court entered an order denying Legacy Hall’s motion to set aside the settlement agreement. The court also confirmed the sale of the bus to Transport Trailer. Aggrieved, Legacy Hall appealed.
STANDARD OF REVIEW
¶ 9. We employ a limited standard of review on appeals from chancery court. Miller v. Pannell, 815 So.2d 1117, 1119 (¶ 9) (Miss.2002). We will not disturb the factual findings of a chancellor so long as the chancellor’s findings were supported by substantial evidence unless the chancellor abused his discretion, was manifestly *108 wrong or clearly erroneous, or applied an erroneous legal standard. Biglane v. Under The Hill Corp., 949 So.2d 9, 13-14 (¶ 17) (Miss.2007). “We use a de novo standard when analyzing questions of law.” Id.
DISCUSSION
¶ 10. “[W]e apply contract law analysis to settlement agreements.” Chantey Music Pub’g Inc. v. Malaco Inc., 915 So.2d 1052, 1056 (¶ 11) (Miss.2005). The elements of a valid contract are: “(1) two or more contracting parties, (2) consideration, (8) an agreement that is sufficiently definite, (4) parties with legal capacity to make a contract, (5) mutual assent, and (6) no legal prohibition precluding contract formation.” GGNSC Batesville LLC v. Johnson, 109 So.3d 562, 565 (¶ 6) (Miss.2013) (citation omitted).
 ¶ 11. “[I]n order to prove that one is non compos mentis to [contract], it must be proven by clear and convincing evidence, rather than by a preponderance of the evidence, and must be proven by the proponent of that position.” Morgan v. Citizens Bank, 912 So.2d 1133, 1136 (¶ 13) (Miss.Ct.App.2005). The contracting party’s mental capacity is evaluated at the time the contract was executed. Mullins v. Ratcliff, 515 So.2d 1183, 1190 (Miss.1987).
¶ 12. On appeal, Legacy Hall first argues that the chancellor erred as a matter of law because he denied the motion to set aside the agreement solely based on the fact that Bill actually signed the settlement agreement. The record clearly shows that this assertion is incorrect.
¶ 13. In his bench opinion, the chancellor considered Bill’s mental state and specifically found that Legacy Hall failed to show that Bill was incompetent on December 12, 2011, when he signed the settlement agreement:
There is no testimony before me, medically speaking, expertly wise speaking, that [Bill] was incompetent on the 12th day of December of 2011. Even taking lay testimony at its best, and even Dr. White’s testimony[,] ... I do not find that there’s really any conclusive evidence here, medically or otherwise, that he was incompetent to execute a contract.
¶ 14. This argument is without merit.
¶ 15. Legacy Hall also argues that the chancellor clearly erred in finding that Bill was competent on December 12, 2011. Legacy Hall claims that its introduction of “uncontroverted medical testimony” showed Bill lacked the mental capacity to enter the agreement.
¶ 16. Dr. White was Legacy Hall’s first witness. Dr. White testified that, prior to December 5, 2011, she consulted with psychiatrists Dr. Mark Ramsey and Dr. Marianne Barnes concerning Bill’s admission to North Mississippi Medical Center’s Behavior Health Clinic. Dr. White’s medical records, including a consultation report from Dr. Barnes, were admitted into evidence. Dr. Barnes’s report showed that on November 3, 2011, she recommended that Bill be admitted to the clinic if he chose to do so. Dr. White testified that Bill chose not to be admitted.
¶ 17. Dr. White also testified to Bill’s mental state before and after the agreement was signed. Dr. White testified that Bill was incompetent on December 5. She also saw him on December 13, and said he was “intact,” but she could not say for certain that he was competent. Dr. White saw Bill a third time on December 21 and found him to be competent and capable of conducting business. Dr. White offered no testimony as to whether Bill was incompetent on December 12, 2011.
*109 ¶ 18. In addition, the court heard from several other witnesses before denying the motion to set aside the settlement agreement. Bill and Linda, along with Larry, testified to the events surrounding the events on December 12. Bill testified that he was under extreme stress, but he remembered signing the agreement.
¶ 19. Logan testified that he had no reason to suspect that Bill was incompetent on December 12, 2011. He also stated that he would not have let Bill sign the agreement if Bill seemed incompetent.
¶ 20. Bennett, who was present as a court reporter on the day the agreement was signed, testified that she spoke with Bill for thirty to forty-five minutes. She testified that Bill wore a large cross around his neck, saying that he was an ordained minister and, therefore, could not tell a lie. Bennett found this “a little odd,” but also stated that Bill did not seem to be under any extreme stress at that time. According to Bennett, Bill seemed “pretty calm” and discussed other topics. In his bench opinion, the chancellor stated that because Bennett was a disinterested party, the court must give great credibility to her testimony.
¶ 21. This Court’s “standard of review is indeed deferential, as we recognize that a chancellor, being the only one to hear the testimony of witnesses and observe their demeanor, is in the best position to judge their credibility.” In re Estate of Carter, 912 So.2d 138, 143 (¶ 18) (Miss.2005) (citing Culbreath v. Johnson, 427 So.2d 705, 708 (Miss.1983)).
¶ 22. The chancellor made it clear in his bench opinion that he was considering Dr. White’s testimony. We find that the chancellor was not clearly erroneous in finding that Legacy Hall did not overcome the presumption of competency. Therefore, we affirm the chancellor’s decision.
¶ 23. THE JUDGMENT OF THE CHANCERY COURT OF LEE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL AND JAMES, JJ., CONCUR.