# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-CA-00499-COA

DEIDI RODRIGUE                                                         APPELLANT

v.

MITCHELL RODRIGUE                                                       APPELLEE

DATE OF JUDGMENT:              01/04/2017
TRIAL JUDGE:                   HON. M. RONALD DOLEAC
COURT FROM WHICH APPEALED:     FORREST COUNTY CHANCERY COURT
ATTORNEYS FOR APPELLANT:       MAURA DELANEY MCLAUGHLIN
                               LEE PARTEE GORE
ATTORNEYS FOR APPELLEE:        JOHN D. SMALLWOOD
                               THOMAS T. BUCHANAN
NATURE OF THE CASE:            CIVIL - DOMESTIC RELATIONS
DISPOSITION:                   AFFIRMED IN PART; REVERSED AND
                               RENDERED IN PART: 09/18/2018
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE IRVING, P.J., GREENLEE AND TINDELL, JJ.

### TINDELL, J., FOR THE COURT:

¶1.     On August 31, 2012, the Forrest County Chancery Court granted Mitch and Deidi Rodrigue a divorce. Following Deidi's timely appeal, this Court affirmed in part and reversed and remanded in part the chancellor's judgment. *Rodrigue v. Rodrigue*, 172 So. 3d 1176, 1178 (¶1) (Miss. Ct. App. 2014) (*Rodrigue I*). After conducting a second trial on remand, the chancellor entered an amended opinion and final judgment on January 4, 2017. On appeal from the chancellor's amended opinion and final judgment, Deidi argues the chancellor erred (1) in his equitable distribution of the marital estate, (2) in his determination of alimony, (3) by not awarding Deidi attorney's fees, and (4) by not awarding Deidi the

costs she incurred in pursuing the first appeal.

¶2. In *Rodrigue I*, we assessed all costs of the appeal to Mitch. *Id.* at 1190 (¶54). On remand, Deidi introduced into evidence a bill showing she incurred $1,543.40 in pursuing the appeal. Because the chancellor erroneously denied these costs, we reverse and render that part of the chancellor's judgment and order Mitch to pay the costs associated with the first appeal. As to the remaining issues regarding the equitable distribution of the marital home, the alimony award, and the denial of Deidi's attorney's fees, we find no error. We therefore affirm in part and reverse and render in part the chancellor's judgment.

**FACTS**

¶3. Deidi and Mitch separated on July 15, 2010, after twenty-one years of marriage. On November 4, 2011, the chancellor entered a temporary order on the issues of custody, visitation, child support, and spousal support. Pursuant to the chancellor's temporary order, Mitch received responsibility for paying the marital debt associated with the marital home, including the mortgage, interest, and taxes.

¶4. On August 31, 2012, the chancellor entered a final judgment that granted Deidi a divorce on the ground of uncondoned adultery and awarded her custody of the parties' two minor children.[1] The chancellor ordered Mitch to pay $1,112.66 in monthly child support. With regard to alimony, the chancellor stated:

> [T]he [c]ourt finds the payment by Mitch of Deidi's car note on the Honda Pilot ($329.95 per month with a balance of $13,562.41 as presented at trial), of which she will have exclusive use, ownership[,] and possession, to be an

---

[1] During their marriage, the parties had three children. By the time of the first divorce hearing, the parties' eldest child had reached the age of majority.

2

appropriate amount of lump[-]sum alimony paid over time. Mitch is obligated to make at least the minimum payments due on the loan until the loan is paid in full. If he chooses to pay the loan off at an accelerated rate, and thus satisfy the obligation in a shorter amount of time and by paying less interest, he will be deemed to have also satisfied his obligation to Deidi as to alimony.

¶5. In dividing the parties' marital property, the chancellor ordered them to sell the marital home and divide the equity. The chancellor granted Deidi use and possession of the marital home and ordered Mitch to pay the mortgage, including taxes and insurance, for one year or until the sale, whichever occurred first.[2] The chancellor further ordered that Mitch "be allowed to claim the interest paid on the home mortgage as a deduction on his tax return until the home [was] sold." From the sale proceeds, the chancellor granted Mitch priority for the reimbursement of the mortgage payments he made between the entry of the November 4, 2011 temporary order and the entry of the August 31, 2012 final judgment.

¶6. Following the entry of the chancellor's judgment, Deidi filed an unsuccessful posttrial motion. Aggrieved, she appealed. In *Rodrigue I*, this Court affirmed in part and reversed and remanded in part the chancellor's judgment. *Id.* at 1178 (¶1). In remanding the case for further proceedings on the issues of equitable division and alimony, we stated the chancellor could also revisit the issues related to child support, attorney's fees, private-school tuition, college education, and life insurance. *Id.* at 1189 (¶¶47, 50).

¶7. In reversing and remanding the chancellor's judgment as to the marital home, this Court stated:

[I]t appears that the chancellor intended for Mitch to receive the mortgage-

---

[2] The parties sold the marital home on May 10, 2013, which occurred prior to the one-year deadline established in the chancellor's August 31, 2012 final judgment.

interest deduction on his tax return. However, there is nothing in the judgment that would indicate that the chancellor viewed this as alimony or that the chancellor intended for Deidi to incur taxable income for the payment as alimony. The chancellor did not designate the mortgage payment as alimony.

Nevertheless, we are compelled to find that the chancellor failed to "consider the estimated amount of income taxes the respective parties must pay on their incomes when determining the provisions of a divorce agreement." *Ivison*[ *v. Ivison*], 762 So. 2d [329,] 337 (¶29) [(Miss. 2000)]. We therefore reverse the chancellor's judgment as to the marital home and remand this matter for the chancellor to consider the proper income-tax consequences that flow from the payment of the mortgage.

*Id.* at 1184-85 (¶¶27-28).

¶8.     We also reversed the chancellor's alimony award after finding the decision constituted an abuse of discretion. *Id.* at 1189 (¶45). The chancellor's findings had clearly shown Deidi's entitlement to alimony, but the chancellor only awarded Deidi $13,562.41 in lump-sum alimony in the form of a motor vehicle with 100,000 miles on it. *Id.* Finding such an award to be unjust and grossly inadequate based on the chancellor's findings, we reversed the alimony award and remanded for further consideration of an appropriate lump-sum or periodic alimony amount. *Id.* at (¶46).

¶9.     On remand, the chancellor held a trial on August 25, 2016, and entered an amended opinion and final judgment on January 4, 2017. In first addressing equitable distribution of the marital property, the chancellor determined "the date of divorce used at the first trial" marked the proper cut off for the accumulation of marital assets. *See Collins v. Collins*, 112 So. 3d 428, 431-32 (¶9) (Miss. 2013) ("The law in Mississippi is that the date on which assets cease to be marital and become separate assets—what we refer to herein as the point of demarcation—can be 'either the date of separation (at the earliest) or the date of divorce

4

(at the latest).'" (quoting *Lowrey v. Lowrey*, 25 So. 3d 274, 285 (¶27) (Miss. 2009))). The chancellor found that Mitch and Deidi had sold the marital home on May 10, 2013. Pursuant to the August 31, 2012 judgment, Deidi had reimbursed Mitch for the mortgage payments he made between the entry of the temporary order and the sale, and then the parties divided the remaining equity. The chancellor found this resulted in each party receiving $35,796.65 from the sale of the home. The chancellor reaffirmed this division of the marital home as equitable. In addition, the chancellor stated that "the house payments made by Mitch pending the sale of the home did not constitute an alimony payment to Deidi and that Mitch was entitled to the mortgage interest[-]tax deduction and the property[-]tax deduction associated with the marital home."

¶10. The chancellor next noted that Mitch's monthly net income at the time of the first trial amounted to $5,546.30, which was roughly four times Deidi's monthly net income at that time of $1,344.67 (not including the child-support payments she received). In determining the parties' marital debt, the chancellor excluded from consideration two loans Deidi had received from her mother and sister for attorney's fees. The chancellor assigned Mitch $39,097.18 of the parties' marital debt, including their daughter's private-school tuition. He assigned Deidi $31,767.07 of the parties' marital debt. The chancellor further stated that any debt Mitch or Deidi thereafter incurred on their assigned debts would be the responsibility of the incurring party.

¶11. In discussing the parties' retirement accounts, the chancellor found Mitch's retirement funds amounted to $148,849.61. The chancellor awarded Deidi half the value of Mitch's

retirement funds ($74,424.81) minus half the value of her retirement funds ($4,120.84), which amounted to $70,303.97. Because the chancellor's previous judgment had already awarded Deidi $60,852.60 of Mitch's retirement funds, the chancellor ordered the remaining $9,451.37 to be distributed to Deidi through a qualified domestic-relations order.

¶12. After distributing the marital property, the chancellor considered an alimony award. The chancellor reaffirmed the findings from his prior judgment on both the *Armstrong*[3] and *Cheatham*[4] factors and again determined Deidi was entitled to alimony. The chancellor ordered Mitch to pay Deidi $600 a month in periodic alimony, with the award to terminate upon either party's death or Deidi's remarriage.

¶13. The chancellor next considered Deidi's requests for attorney's fees related to both the divorce proceeding and the contempt action. After finding that a total of four hours were attributable to Deidi's contempt action, the chancellor ordered Mitch to pay Deidi $800 for the attorney's fees she incurred in pursuing the contempt action. As to Deidi's request for attorney's fees related to the divorce action, however, the chancellor found Deidi failed to meet her burden of proving the *McKee*[5] factors and did not plead for appeal costs and fees. As a result, the chancellor denied Deidi's request for attorney's fees for the divorce action.

¶14. Following the entry of the chancellor's judgment, the parties each filed posttrial motions. Relevant to this appeal, the chancellor amended his final judgment with regard to

---

[3] *Armstrong v. Armstrong*, 618 So. 2d 1278, 1280 (Miss. 1993).

[4] *Cheatham v. Cheatham*, 537 So. 2d 435, 438 (Miss. 1988).

[5] *McKee v. McKee*, 418 So. 2d 764, 767 (Miss. 1982).

Deidi's request for attorney's fees and costs on appeal. After reviewing the pretrial order, the chancellor acknowledged "that appeal costs and attorney['s] fees are listed as an issue at trial on remand." The chancellor found, however, that Deidi presented no evidence at the remand trial as to her appeal costs. The chancellor further found the only evidence Deidi presented of her attorney's fees on appeal was the information "generally included in [her] itemized attorney['s] fee billings." Because the chancellor found Deidi failed to establish at trial either the reasonableness or necessity of those charges, he reaffirmed his denial of her request for costs and attorney's fees on appeal.

¶15. Aggrieved, Deidi appeals.

## STANDARD OF REVIEW

¶16. This Court's review of domestic-relations cases is limited. *Turnage v. Brooks*, 213 So. 3d 103, 105 (¶2) (Miss. Ct. App. 2016). We do not disturb a chancellor's factual findings unless the chancellor was manifestly wrong or clearly erroneous or applied an incorrect legal standard. *Id.* Where substantial evidence supports the chancellor's findings, we lack authority to disturb them. *Id.* However, we review questions of law de novo. *Id.*

## DISCUSSION

### I. Equitable Distribution

¶17. Arguing the chancellor erred in his equitable distribution of the marital estate, Deidi asserts the following:

> The repayment of the house notes paid by Mitch should not have been reimbursed to Mitch in toto because the house payments were in part support of the children[,] and Deidi owned a one-half interest in the house. Deidi's interest may have been, in part, non-economic. She was penalized for not

making the house payments directly. Further, Mitch's attorney's fees were characterized as a marital debt while Deidi's were not.

¶18. This Court will affirm the chancellor's distribution of marital assets when supported by substantial credible evidence. *Proctor v. Proctor*, 143 So. 3d 615, 618-19 (¶11) (Miss. Ct. App. 2014). In *Rodrigue I*, the only reason this Court reversed the chancellor's judgment as to the marital home was because "the chancellor failed to 'consider the estimated amount of income taxes the respective parties must pay on their incomes when determining the provisions of a divorce agreement.'" *Id.* at 1185 (¶28) (quoting *Ivison*, 762 So. 2d at 337 (¶29)). We therefore remanded so the chancellor could consider the proper income-tax consequences that flowed from Mitch's payment of the mortgage. *Id.* On remand, the chancellor considered the issue and determined that Mitch's mortgage payments did not constitute alimony and that he was entitled to the tax deductions associated with the marital home. Because substantial credible evidence supports the chancellor's equitable division of the marital estate, we find Deidi's argument lacks merit.

## II. Alimony

¶19. Deidi next challenges the adequacy of the chancellor's alimony determination on remand. "'In the case of a claimed inadequacy of alimony, the appellate court will interfere only where the decision is seen as so oppressive, unjust[,] or grossly inadequate as to evidence an abuse of discretion.'" *Proctor*, 143 So. 3d at 620 (¶18) (quoting *Armstrong v. Armstrong*, 618 So. 2d 1278, 1280 (Miss. 1993)). Here, the chancellor originally ordered Mitch to pay the note on Deidi's vehicle, which amounted to a lump-sum amount of $13,562.41, or $329.95 a month. On remand, the chancellor awarded Deidi $600 in monthly

8

periodic alimony. However, because Deidi remarried on May 14, 2014, her periodic-alimony payments terminated as of that date. *See Stroh v. Stroh*, 221 So. 3d 399, 412-13 (¶44) (Miss. Ct. App. 2017) ("[Periodic alimony] has no fixed termination date but automatically terminates upon the remarriage of the recipient or death of the payor.").

¶20. On appeal, Deidi asserts the chancellor's new alimony determination resulted in her only receiving $12,300 in periodic alimony. Because this amounted to less than the original lump-sum award of $13,562.41, Deidi argues the chancellor clearly erred. Although we acknowledge the total amount of periodic alimony Deidi received may have been less than the original lump-sum award, we find this alone fails to constitute an abuse of discretion. On remand, the chancellor properly considered the *Armstrong* factors as required by caselaw and determined Deidi was entitled to alimony. *See id.* at 413 (¶44). Based on his findings, the chancellor then awarded Deidi $600 in monthly periodic alimony. Because substantial credible evidence supports the chancellor's decision, we find no merit to Deidi's argument.

### III. Attorney's Fees

¶21. Deidi next asserts the evidence clearly showed both her inability to pay her own attorney's fees and a disparity in the parties' relative financial positions. As a result, Deidi argues the chancellor erred by not awarding her the attorney's fees she incurred for both the original appeal and the current appeal.[6] In addition, Deidi contends the chancellor erred by excluding a witness who planned to testify about the reasonableness of her attorney's fees. We review both a chancellor's denial of attorney's fees and exclusion of evidence for abuse

---

[6] In previously remanding the case, we stated the chancellor was free to revisit his decision to not award Deidi attorney's fees. *Rodrigue I*, 172 So. 3d at 1189 (¶47).

of discretion. *See Heisinger v. Riley*, 243 So. 3d 248, 259 (¶¶45-46) (Miss. Ct. App. 2018).

### a.      Exclusion of Witness Testimony

¶22.    At trial, Deidi attempted to call Michael Ratliff, a local attorney, to testify about the reasonableness of her attorney's fees in accordance with the *McKee* factors. Mitch objected that Deidi neither designated Ratliff as an expert witness in discovery nor provided the expert opinions to which Ratliff planned to testify. Although the pretrial order listed Ratliff as one of Deidi's witnesses, the chancellor noted that neither party designated any experts. As a result, the chancellor sustained Mitch's objection and excluded Ratliff's testimony. After the chancellor exited the courtroom, Deidi made a proffer of Ratliff's testimony.

¶23.    "Under the discovery rules, a party must disclose the name and content of any expert witness that it may call to testify." *Estate of Baxter v. Shaw Assocs. Inc.*, 797 So. 2d 396, 400 (¶15) (Miss. Ct. App. 2001) (citing M.R.C.P. 26(b)). In addition, Uniform Chancery Court Rule 1.10(A) provides that, "[a]bsent special circumstances[,] the court will not allow testimony at trial of an expert witness who was not designated as an expert witness to all attorneys of record at least sixty days before trial." Because Deidi failed to designate Ratliff as an expert witness as required, we find no abuse of discretion in the chancellor's decision to exclude Ratliff's testimony.

### b.      Denial of Attorney's Fees

¶24.    With regard to an award of attorney's fees, this Court recently stated:

> Generally, attorney's fees should only be awarded where the moving party has demonstrated an inability to pay. A trial court abuses its discretion by awarding attorney's fees without first finding that the party is unable to pay the fees. Chancellors are instructed to apply the *McKee* factors in granting or

10

denying attorney's fees. The *McKee* factors include:

> (1) relative financial ability of the parties; (2) the skill and standing of the attorney employed, (3) [the] novelty and difficulty of [the] issues in the case, (4) the responsibility required in managing the case, (5) [the] time and labor required, (6) the usual and customary charge in the community, and (7) whether the attorney was precluded from undertaking other employment by accepting the case.

*Black v. Black*, 240 So. 3d 1226, 1235 (¶27) (Miss. Ct. App. 2017) (citations and internal quotation marks omitted).

¶25. Without Ratliff's testimony, the only evidence Deidi presented regarding her attorney's fees included three invoices from her attorney and her own testimony about her inability to pay the fees. In his amended opinion and final judgment, the chancellor concluded this evidence failed to sufficiently prove both Deidi's inability to pay and all of the *McKee* factors. Because we cannot say the chancellor's decision resulted in an abuse of discretion, we decline to reverse. We therefore find this assignment of error lacks merit.

### IV. Appeal Costs

¶26. Deidi next argues the chancellor erred by failing to award her the costs she incurred from the previous appeal. "Mississippi Rule of Appellate Procedure 36 governs appeal costs. Rule 36(a) provides for the taxation of costs of appeal to the losing party unless otherwise agreed upon by the parties or ordered by the appellate court." *Blake v. Estate of Clein ex rel. Clein*, 37 So. 3d 622, 627 (¶12) (Miss. 2010). In *Rodrigue I*, this Court assessed to Mitch all costs related to the first appeal. *Id.* at 1190 (¶54). On remand, Deidi introduced into evidence a bill showing she incurred $1,543.40 in pursuing the first appeal. Upon review,

we find the chancellor erred by failing to award Deidi those appellate costs.  We therefore reverse that portion of the chancellor's judgment and render a decision in Deidi's favor.

## CONCLUSION

¶27.    Because we find the chancellor erred by failing to award Deidi the appellate costs she incurred in *Rodrigue I*, we reverse that portion of the chancellor's judgment and render a decision in Deidi's favor.  With regard to the remaining issues on appeal, however, we find no error.  We therefore affirm the chancellor's judgment as to the equitable division of the marital home, alimony, and attorney's fees.

¶28.    **AFFIRMED IN PART; REVERSED AND RENDERED IN PART.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, WILSON, GREENLEE AND WESTBROOKS, JJ., CONCUR.  FAIR, J., NOT PARTICIPATING.**