# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-CA-00097-COA

**JOHN L. WARD**                                                    **APPELLANT**

**v.**

**THE ESTATE OF MARY S. COOK BY AND**                              **APPELLEES**
**THROUGH LYNN E. COOK III, CHARLES J.**
**COOK, AND JEAN COOK ARICK,**
**CONSERVATORS**

DATE OF JUDGMENT:             12/21/2018
TRIAL JUDGE:                  HON. DOROTHY WINSTON COLOM
COURT FROM WHICH APPEALED:    OKTIBBEHA COUNTY CHANCERY
                              COURT
ATTORNEYS FOR APPELLANT:      BENNIE L. JONES JR.
                              ROBERTA LYNN HAUGHTON
ATTORNEYS FOR APPELLEES:      DEWITT T. HICKS JR.
                              LYDIA QUARLES
NATURE OF THE CASE:           CIVIL - OTHER
DISPOSITION:                  AFFIRMED - 04/21/2020
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE J. WILSON, P.J., TINDELL AND C. WILSON, JJ.**

**J. WILSON, P.J., FOR THE COURT:**

¶1.     After Mary Cook's three children were appointed as conservators of her person and

estate, they filed a petition alleging that her former business partner, John Ward, improperly

obtained residential real property and money from Cook[1] while she was incompetent.  The

chancery court found that Ward had abused his confidential relationship with Cook and used

undue influence to obtain the property and to take or spend a total of $95,537.86 from Cook's

---

[1] We refer to Mary Cook as "Cook" in this opinion.

bank accounts. Therefore, the court voided the deed conveying the property to Ward and ordered Ward to repay Cook's estate for the full amount of the funds he improperly took or spent. On appeal, Ward challenges the chancery court's finding of a confidential relationship and attacks the judgment on various other grounds. We find no reversible error and therefore affirm the judgment of the chancery court.

## FACTS AND PROCEDURAL HISTORY

¶2. Cook was born in 1943. She married Lynn Cook II in the 1960s, and they had three children together: Lynn Cook III, Charles Cook, and Jean "Marie" Arick. Lynn Cook II died of cancer in 1996.

¶3. In the early 1990s, Cook met Ward while working in the cafeteria at East Mississippi Community College. In 2000, Cook and Ward formed DeeJohn Enterprises,[2] for the purpose of buying, renovating, and re-selling or renting residential properties. Cook had a sixty percent interest in the business, and Ward had a forty percent interest. All properties were purchased with funds that Cook provided and were titled in her name. Ward provided labor to renovate and maintain the properties.

¶4. Cook and Ward's relationship apparently became romantic in the early 2000s, which led to the end of Ward's marriage. However, no more than a few close friends were aware of their romantic involvement. Cook's children denied knowledge of it and knew Ward only as Cook's yard man and business partner.

¶5. Cook had back surgery in 2012, after which her mental and physical health began to

---

[2] Cook was known as "DeeDee."

deteriorate. Her children testified that she began to forget holidays, birthdays, and people. In fact, her condition regressed to the point that she was sometimes unable to recognize her children. Cook also stopped maintaining her personal hygiene—forgetting to brush her hair or teeth—and lost significant weight. She also misused or forgot to take her prescription medicines for glaucoma and diabetes. In addition, she lost control of her legs, and her children had to take away her car keys. During this same time period, Cook also became increasingly reliant on Ward and his help, and the chancery court found that a confidential relationship existed between Cook and Ward.

¶6.     Ward and Cook had two accounts for DeeJohn Enterprises at Cadence Bank. The first account was opened in 2011 (shortly before Cook's back surgery) and closed in 2012, and the second account was opened in 2013 and closed in 2016. Ward and Cook were both authorized to sign on both accounts. The chancery court found that Ward made unauthorized withdrawals or transfers totaling $13,748.25 from the first account. He did so by writing checks to himself, making transfers to his personal account, and/or forging Cook's signature. As to the second account, the chancery court found that Ward used a debit card to convert deposits made by Cook into cash for his own personal use. The unauthorized withdrawals from the second account totaled $10,770.

¶7.     The chancery court also found that between 2015 and 2017 Ward had taken a total of $55,812.03 from Cook's personal bank account by making unauthorized withdrawals and cashing checks made payable to himself. In December 2017, Ward took Cook to the bank to close her personal account and move the funds into a new joint account owned by both

3

Ward and Cook.[3] Ward then converted another $10,860 from the joint account before it was closed in early 2018.

¶8. Finally, the chancery court found that Ward had purchased liquor, sporting goods, and other items and incurred overdraft and ATM fees from all the accounts in the total amount of $4,347.58. All told, the chancery court found that Ward had improperly converted or spent $95,537.86 from all the accounts.

¶9. In addition, in September 2017, Cook deeded Ward a residential property on Overstreet Drive in Starkville.[4] Although the deed included a recital that consideration was paid, there is no evidence that Ward paid Cook any actual consideration for the property. The deed was not notarized, and there is no evidence that it was prepared by an attorney or identifiable party. Lynn Cook III testified that an attorney notified him about the deed and told him that it did not appear to be proper.

¶10. In March 2018, Cook's three children filed a petition to be appointed as conservators of their mother's person and estate, alleging that she lacked the mental capacity to manage her affairs. Their petition was supported by letters from two of Cook's physicians. The chancery court granted their petition. The conservators then filed a petition to cancel the Overstreet Drive deed, to recover funds that Ward had taken from Cook's personal account

---

[3] Lynn Cook III testified that bank employees told him that Ward drove Cook to the bank and had the employees come to the car for Cook to sign the necessary paperwork.

[4] Cook originally purchased the Overstreet Drive property using the proceeds from the sale of her mother's home in Pass Christian, which she inherited after her mother passed away. During the pendency of this appeal, the conservators requested permission to accept an offer to sell the Overstreet Drive property for $73,800. Ward maintained that the Overstreet Drive property had been appraised for $116,000 within the past two years.

4

and joint accounts, and for other relief. Their petition alleged that Cook had executed the Overstreet Drive deed and that Ward had taken the funds at a time when Cook was incompetent. Ward answered the petition and denied the conservators' allegations, and the case proceeded to trial on October 17, 2018, and November 9, 2018. Cook's three children all testified at trial. Ward did not testify.

¶11.   Following the trial, the chancery court entered an opinion and final judgment finding that a confidential relationship existed between Ward and Cook and that Ward had used undue influence to obtain the Overstreet Drive property and to obtain or spend a total of $95,537.86 from Cook's bank account and joint accounts as detailed above.[5] Therefore, the court set aside the Overstreet Drive deed and granted Cook's estate a judgment against Ward for $95,537.86 plus five percent post-judgment interest. Ward then appealed.

**ANALYSIS**

¶12.   "We employ a limited standard of review on appeals from chancery court." *Legacy Hall of Fame Inc. v. Transp. Trailer Serv. Inc.*, 139 So. 3d 105, 107 (¶9) (Miss. Ct. App. 2014). We "will not disturb the factual findings of a chancellor when supported by substantial evidence unless we can say with reasonable certainty that the chancellor abused his discretion, was manifestly wrong, clearly erroneous or applied an erroneous legal standard." *Biglane v. Under The Hill Corp.*, 949 So. 2d 9, 13-14 (¶17) (Miss. 2007)

---

[5] As discussed later, Ward challenges the chancery court's finding of a confidential relationship and raises various other issues on appeal. However, Ward does not raise any issues concerning specific financial transactions or accounts or the chancery court's calculation of the total monetary judgment against him. Therefore, we omit further discussion of the particulars of the relevant accounts and transactions.

(brackets omitted) (quoting *Cummings v. Benderman*, 681 So. 2d 97, 100 (Miss. 1996)). "We use a de novo standard when analyzing questions of law." *Id.* at 14 (¶17).

¶13. On appeal, Ward argues that the chancellor erred by (1) finding that Ward had a confidential relationship with Cook and exercised undue influence over Cook when the conservators did not plead those issues in their petition; (2) considering hearsay; (3) finding that Cook was not competent to execute the Overstreet Drive deed; (4) holding that Ward lacked standing to challenge Cook's conservatorship; (5) allowing Cook's daughter to testify about some of Cook's medical records; and (6) excluding an expert witness whom Ward disclosed just before the second day of the trial. We address these issue in turn below.

I. **The chancellor did not err by finding a confidential relationship and undue influence.**

¶14. Ward argues the chancellor erred by finding that he exercised undue influence over Cook because the conservators did not plead this issue in their petition and because there was insufficient evidence of a confidential relationship between him and Cook. However, we hold that the issue of undue influence was tried by implied consent and that there was ample evidence to support the chancellor's finding of a confidential relationship.

¶15. It is true that the conservators did not expressly allege a confidential relationship or undue influence in their petition to recover assets from Ward. It appears that perhaps they did not learn the nature and full extent of their mother's relationship with Ward until after they sued him. In any event, Mississippi Rule of Civil Procedure 15(b) provides:

> When issues not raised by the pleadings are tried by expressed or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary

to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice the maintaining of the action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence. The court is to be liberal in granting permission to amend when justice so requires.

M.R.C.P. 15(b). An issue may be "tried by implied consent" if during trial, "both parties [were] able to detect that a new issue was being litigated." *Par Indus. Inc. v. Target Container Co.*, 708 So. 2d 44, 52 (¶20) (Miss. 1998) (citing *McCarty v. Kellum*, 667 So. 2d 1277, 1283-84 (Miss. 1995)). If a party has fair notice that a new issue is being litigated and yet fails to object, then the trial court does not abuse its discretion by addressing the issue. *Shipley v. Ferguson*, 638 So. 2d 1295, 1300 (Miss. 1994).

¶16. At two points during the trial in this case, the chancellor clearly stated that the issue of undue influence was being tried. The first time was during Ward's cross-examination of Lynn Cook III. In overruling an objection by the conservators, the chancellor stated that the conservators had "to show undue influence" in order "to prevail," so the nature and history of "the relationship between [Ward and Cook]" was "very relevant." In addition, at the beginning of the second day of trial, the chancellor stated:

> [The conservators] have alleged [and filed a] motion to set aside things . . . based on her being in a confidential relationship . . . , and . . . their burden is to show that. Then once they show that, the burden shifts to [Ward] . . . .
>
> . . . .

[The conservators] have to demonstrate by clear and convincing evidence that there was a confidential relation. Then a rebut [sic] presumption of undue influence arises. . . . And then the burden shifts to [Ward] to show by clear and convincing evidence that the gift was not the product of undue influence. . . . That's what the law says.

. . . .

And you show that by full knowledge, because she knew what she was doing, independent consent, action, good faith on his part. That's what the law says.

. . . .

They have to meet a burden. If they meet it, then it shifts to your client . . . .

After the chancellor's extended discussion of the law of confidential relationships and undue influence, Ward did *not* object that the issues had not been pled. Rather, Ward's counsel seemingly agreed that the chancellor had correctly stated the applicable law.

¶17. In short, Ward was clearly on notice that the issues of a confidential relationship and undue influence were being litigated, but he made no objection. Therefore, we hold that the issues were tried by implied consent pursuant to Rule 15(b).

¶18. We also hold that there was sufficient evidence to support the chancellor's finding of a confidential relationship between Ward and Cook. *See Olive v. McNeal*, 47 So. 3d 735, 741 (¶22) (Miss. Ct. App. 2010) ("Whether a confidential relationship exists is a question of fact, and this Court cannot disturb a chancellor's findings of fact if they are supported by substantial credible evidence."). A confidential relationship "is a relation between two people in which one person is in a position to exercise a dominant influence upon the other because of the latter's dependency upon the former, arising either from weakness of mind or body, or through trust." *Wright v. Roberts*, 797 So. 2d 992, 998 (¶17) (Miss. 2001)

8

(quoting *Madden v. Rhodes*, 626 So. 2d 608, 617 (Miss. 1993)). The existence of a confidential relationship must be proved by clear and convincing evidence. *Foster v. Ross*, 804 So. 2d 1018, 1022-23 (¶¶14-15) (Miss. 2002). Several factors should be considered to determine whether a confidential relationship exists:

> (1) whether one person has to be taken care of by others, (2) whether one person maintains a close relationship with another, (3) whether one person is provided transportation and has their medical care provided for by another, (4) whether one person maintains joint accounts with another, (5) whether one is physically or mentally weak, (6) whether one is of advanced age or poor health, and (7) whether there exists a power of attorney between the one and another.

*Wright*, 797 So. 2d at 998 (¶18) (quoting *In re Estate of Dabney*, 740 So. 2d 915, 919 (¶12) (Miss. 1999)).

¶19. In this case, the chancellor found that "at least six of the[se] seven factors" had been established by clear and convincing evidence. The chancellor found:

> That is, since 2012 Mrs. Cook has required supervisory care because of her physical and mental decline; that Mrs. Cook relied on Ward to run errands for her, take her shopping, pick up her prescriptions and the like because she was unable to drive and ambulate on her own; that a close relationship existed between Mrs. Cook and Ward as evidenced by the numerous notes and cards introduced by Ward; that Mrs. Cook and Ward opened a joint account; that Mrs. Cook suffered from both physical and mental ailments; and that Mrs. Cook was 75 years of age and in poor health while living alone. As to the seventh factor, no power of attorney was produced.

¶20. There is substantial evidence to support the chancellor's findings on these factors and her finding of a confidential relationship. The chancellor's findings are consistent with the conservators' testimony regarding their mother's significant physical and mental decline following her back surgery in 2012, the evidence of Cook's close relationship with Ward and

her reliance on him, and the access that Ward had to Cook's bank accounts. We also note that Ward chose not to testify in his defense at trial, so there is no direct evidence in the record to support Ward's claim that Cook acted of her own free will when she signed the Overstreet Drive deed or with respect to any of the other transactions at issue. While Ward argues that other evidence supports his position, it is the role of the chancellor, not this Court, to determine the credibility of the witnesses and the weight of the evidence. *Mayton v. Oliver*, 247 So. 3d 312, 322 (¶¶33-34) (Miss. Ct. App. 2017) (collecting cases). Based on the evidence presented at trial, we cannot say that the chancellor clearly or manifestly erred by finding that a confidential relationship existed between Ward and Cook.

¶21. Because a confidential relationship was established, the burden of proof shifted to Ward to prove by clear and convincing evidence that he did not obtain the Overstreet Drive property and Cook's funds by undue influence. *Van Quinn v. Quinn*, 278 So. 3d 1160, 1164 (¶10) (Miss Ct. App. 2019). "To rebut the presumption [of undue influence], [Ward] had to prove by clear and convincing evidence: (1) that he acted in good faith, (2) that [Cook] had full knowledge and deliberation of [her] actions and their consequences, and (3) that [Cook] exercised independent consent and action." *Id*. The chancellor found that Ward failed to rebut the presumption, and Ward does not challenge that finding on appeal. Rather, he only argues that the chancellor erred by finding that a confidential relationship existed. For the reasons discussed above, that argument is without merit. Therefore, we conclude that the chancellor did not clearly or manifestly err by finding that Ward obtained Cook's money and property by undue influence.

10

## II. Ward waived any hearsay objection.

¶22. Ward next argues that the chancellor erred by considering hearsay testimony regarding what a bank teller told Lynn Cook III. However, Ward failed to object to the testimony at trial. Indeed, although Ward fails to provide a relevant record citation, it is appears that he is complaining about testimony that his own attorney elicited. A party cannot complain about testimony that his own attorney elicited. *Shaheed v. State*, 205 So. 3d 1105, 1111-1112 (¶20) (Miss. Ct. App. 2016). In addition, "[w]hen . . . hearsay goes into evidence without objection, the trial court has no opportunity to evaluate the proffered testimony under [Mississippi Rule of Evidence] 803(24), or any other exception. Thus, the failure to object to hearsay operates as a waiver of the issue on appeal." *Swinney v. State*, 241 So. 3d 599, 610 (¶40) (Miss. 2018) (quoting *Rubenstein v. State*, 941 So. 2d 735, 764 (¶113) (Miss. 2006)). Finally, hearsay evidence that is admitted without objection becomes competent evidence for the trier of fact to consider. *Shaheed*, 205 So. 3d at 1110 (¶16). Therefore, this issue is entirely without merit.

## III. Ward's challenge to the chancellor's finding that Cook lacked capacity to sign the Overstreet Drive deed is moot.

¶23. Ward briefly argues that the chancellor erred by finding that Cook was not competent to sign the Overstreet Drive deed. Although the chancellor did state that Cook lacked capacity to sign the deed, the chancellor's primary finding of undue influence was *not* dependent on any finding that Cook was totally incompetent. The sort of "weakness of mind" or "weakness of intellect" that may support a finding of undue influence is a "lower standard" than a "total lack of capacity" to execute a deed. *Smith v. Smith*, 574 So. 2d 644,

11

653 (Miss. 1990); *see also In re Moses' Will*, 227 So. 2d 829, 835 (Miss. 1969) ("Undue influence operates upon the will as well as upon the mind. It is not dependent upon a lack of testamentary capacity."). We have already held that there is substantial evidence to support the chancellor's finding of undue influence, which was the primary basis on which she set aside the deed, and that finding is by itself sufficient to sustain the judgment in favor of the conservators. *Cf. Estate of Lawler v. Weston*, 451 So. 2d 739, 740 (Miss. 1984) (holding that sufficient proof of either undue influence or a lack of capacity is sufficient to sustain a verdict in favor of the contestants in a will contest). Therefore, it is unnecessary to address this additional finding by the chancellor.

### IV. The chancellor correctly denied Ward's motion to set aside the conservatorship.

¶24. As noted above, the trial in this case was held on October 17, 2018, and November 9, 2018. On November 8, 2018, Ward filed a mid-trial motion to set aside the conservatorship, alleging that Cook did not receive five days' notice of the hearing on the conservatorship petition as required by Mississippi Code Annotated section 93-13-253 (Rev. 2013). The chancellor denied the motion and ruled that Ward was a "stranger" to Cook's conservatorship and lacked standing to challenge it. On appeal, Ward argues that the chancellor erred and that the conservatorship was void and should be set aside due to insufficient notice and for additional reasons.

¶25. A person has both standing and a *right* to petition for the removal of a conservator if that person "has a legitimate interest present or prospective in [the ward's] estate, or . . . some personal responsibility as regards the estate or the care or welfare of the ward." *In re*

12

*Conservatorship of Davis*, 954 So. 2d 521, 524 (¶12) (Miss. Ct. App. 2007) (emphasis omitted) (quoting *Conservatorship of Harris v. King*, 480 So. 2d 1131, 1132 (Miss. 1985)). In addition, "the chancellor, as superior guardian, *might* take notice of petitions by strangers in such cases as a matter of information to him openly tendered," but such a stranger has "no privilege of appeal" if the chancellor refuses to consider his petition. *Id.* (emphasis added) (quoting *Harris*, 480 So. 2d at 1132). In other words, it is "clear . . . under Mississippi law that the receipt of such petitions [from 'strangers'] is within the chancellor's discretion." *Id.* (quoting *Harris*, 480 So. 2d at 1132).

¶26. In the chancery court, Ward argued that he had standing to challenge the conservatorship simply because he was being sued by the conservators. On appeal, he similarly argues that his claim to the Overstreet Drive property constitutes an "interest" in Cook's estate. However, the chancellor correctly rejected Ward's argument. The estate's claim that Ward had wrongfully taken money and property from Cook did not give Ward a legitimate interest in Cook's estate. Therefore, Ward was a mere "stranger" to the estate. Furthermore, the chancellor did not abuse her discretion by denying Ward's eleventh-hour challenge to the conservatorship. This issue is without merit.

> **V.     The chancellor did not commit any reversible error by allowing Cook's daughter to testify briefly about one of Cook's medical tests.**

¶27. Ward next argues the chancellor erred by allowing Cook's daughter, Marie Arick, to testify about the meaning of Cook's Hemoglobin A1c test results.[6] Arick is a certified health

---

[6] A Hemoglobin A1c test measures a patient's average blood-sugar levels over a period of two to three months.

13

education specialist with a master's degree in health promotion, but she was not designated or qualified as an expert witness. The chancellor stated that she (i.e., the chancellor) "happen[ed] to know" about the Hemoglobin A1c test but that Arick could testify about it "for the record." Ward now argues that the chancellor erred by allowing the testimony.

¶28. Ward arguably waived any objection to this specific testimony. Ward previously made a similar objection to other testimony by Arick, but he did not request a continuing objection or make a contemporaneous objection to the testimony at issue. *See* M.R.E. 103(a)(1), (b). In any event, we conclude that any error in allowing Arick to testify about the test results was harmless. The chancellor's opinion mentioned the test results only briefly, and there is nothing to indicate that the issue impacted the chancellor's decision. *See Harden v. Scarborough*, 240 So. 3d 1246, 1257 (¶33) (Miss. Ct. App. 2018); *Inge v. Inge*, 227 So. 3d 1185, 1190 (¶17) (Miss. Ct. App. 2017).

> **VI.** **The chancellor did not abuse her discretion by excluding the testimony of Ward's untimely disclosed expert.**

¶29. Finally, Ward makes a one-paragraph argument that the chancellor erred by excluding an expert witness. Ward's argument includes no citations to the record or relevant legal authority. Therefore, the argument is procedurally barred. *See* M.R.A.P. 28(a)(7); *Hill v. State*, 215 So. 3d 518, 523-24 (¶10) (Miss. Ct. App. 2017).

¶30. Procedural bar notwithstanding, the issue is also without merit. Ward attempted to designate a new expert witness, Dr. Joe Edward Morris, a psychologist, just before the second day of trial. Morris had never met Cook, but based solely on a review of her medical records, he apparently intended to opine that she did not suffer from dementia and was

14

competent to manage her affairs. The conservators objected to Dr. Morris's designation as untimely and to his opinions as "speculative." At the beginning of the second day of trial, the chancellor ruled that the designation was untimely and excluded Morris's testimony.

¶31. We review the chancellor's exclusion of Morris's testimony only for an abuse of discretion. *Rodrigue v. Rodrigue*, 270 So. 3d 933, 939 (¶23) (Miss. Ct. App. 2018). Uniform Chancery Court Rule 1.10(a) provides, "Absent special circumstances the court will not allow testimony at trial of an expert witness who was not designated as an expert witness to all attorneys of record at least sixty days before trial." Ward clearly violated this rule by not designating Morris until after the first day of trial. Therefore, the chancellor did not abuse her discretion by excluding Morris's testimony. *Rodrigue*, 270 So. 3d at 939 (¶23).

## CONCLUSION

¶32. The chancellor's findings that a confidential relationship existed between Ward and Cook and that Ward failed to rebut the presumption of undue influence are supported by substantial evidence. Therefore, the chancery court did not err by setting aside the Overstreet Drive deed and by granting Cook's estate a judgment against Ward for the converted and misspent funds totaling $95,537.86. Ward's remaining arguments are without merit.

¶33. **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., GREENLEE, WESTBROOKS, TINDELL, McDONALD, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR.**